# COMPOSITE

# EXHIBIT A

**IN THE SUPERIOR COURT OF FULTON COUNTY**
**STATE OF GEORGIA**

| | |
|---|---|
| **CITY OF EAST POINT, GEORGIA,** | ) |
| **Plaintiff,** | ) **JURY TRIAL DEMANDED** |
| **v.** | ) **CIVIL ACTION NO. _____** |
| **KINSALE INSURANCE COMPANY,** | ) |
| **Defendant.** | ) |

## COMPLAINT

COMES NOW, The City of East Point, Georgia ("East Point" or "Plaintiff"), in the above styled action, and files this Complaint against the above-named Defendant Kinsale Insurance Company ("Kinsale" or "Defendant") and respectfully states as follows:

### PARTIES, JURISDICTION AND VENUE

1.

Plaintiff is a duly incorporated municipality in Fulton County, Georgia. Plaintiff operates the East Point Police Department.

2.

Kinsale is an insurance company organized under the laws of the state of Arkansas with its principal place of business located at 425 West Capital Avenue, Suite 1800, Little Rock, AR 72201. Kinsale is an unauthorized insurance carrier in Georgia, and is also known as a surplus lines carrier.

3.

Defendant is subject to the jurisdiction of this Court because it sold its policy to East Point and the current dispute arose there. Pursuant to O.C.G.A. § 33-5-34, service can be made c/o The Georgia Office of Insurance and Safety Fire Commissioner, Two Martin Luther King, Jr. Drive, West Tower, Suite 704, Atlanta, Georgia 30334.

1

4.

Venue is proper pursuant to O.C.G.A. § 33-5-34 because Kinsale sold an insurance policy to East Point, a municipality in Fulton County, Georgia and the current dispute arose there.

## KINSALE POLICY

5.

Kinsale issued Plaintiff a Professional Liability Policy, No. 0100043206-1 covering the operations of the East Point Police Department; policy period October 1, 2017 to October 1, 2018 (the "Policy").

6.

Plaintiff filed its claim with Kinsale in August 2018 and was given Claim No. 00010177 (the "Claim").

## FACTUAL SITUATION

7.

On or about August 18, 2018, a group of teenagers were stopped and detained by an officer of the East Point Police Department, Officer Richard Gooddine. Included in this group of teenagers was a fifteen (15) year old female, hereinafter referred to as "Jane Doe."

8.

Jane Doe claims she was detained by Officer Gooddine when he separated her from her friends.

9.

Officer Gooddine then allegedly performed an inappropriate frisk and search of Jane Doe, including ordering her to lift up her bra and looking down her pants. He then ordered her into his squad car and told her he was taking her home.

10.

Ultimately, Jane Doe claims Officer Gooddine took her to an apartment complex and sexually assaulted her. Other claims made by Jane Doe against Officer Gooddine from the events she says took place on the night of August 18, 2018 include, but are not limited to: Sexual harassment, assault, intentional and negligent infliction of emotional distress, negligent hiring, negligent retention, failure to follow procedure, use of unreasonable force, violation of human rights, stalking, and harassment

11.

On August 28, 2018, counsel for Jane Doe sent Plaintiff her Ante Litem notice of sexual assault pursuant to O.C.G.A. § 36-33-5.

12.

On September 12, 2018, counsel for Jane Doe sent a second Ante Litem Notice, which included a limited demand for damages under O.C.G.A. § 36-33-5.

13.

Defendant was informed of the claims made by Jane Doe in August 2018.

14.

On September 19, 2018, Kinsale sent its denial letter to Plaintiff denying coverage and also denying any duty to defend Plaintiff.

15.

In its November 6, 2018 Amended Notice of Claims and Demand for Settlement, counsel for Jane Doe greatly reduced the severity of the allegations against Officer Gooddine. This Amended Notice was sent to Defendant and Plaintiff received no response or update.

16.

The new claims trigger coverage and Defendant's duty to defend Plaintiff in the underlying case.

17.

Plaintiff sent its statutory bad faith letter, pursuant to O.C.G.A. § 33-4-6 on or about July 16, 2019.

## COUNT I-
## BREACH OF CONTRACT: DUTY TO DEFEND

18.

Paragraphs 1 through 17 are incorporated as if fully restated herein.

19.

Kinsale has a duty under its Policy to provide a defense to East Point.

20.

Kinsale has refused to honor its obligations under the contract.

21.

East Point has been harmed by Kinsale's breach of contract in an amount to be determined at trial.

## COUNT II- NOTICE OF BAD FAITH CLAIM

22.

Paragraphs 1 through 21 are incorporated as if fully restated herein.

23.

East Point made a bad faith demand to Kinsale for a defense of this case pursuant to O.C.G.A. § 33-4-6, which was sent on or about July 16, 2019. A copy is attached hereto as Exhibit "A".

24.

East Point will amend its Complaint to add a Bad Faith Claim after the statutory sixty (60) days pursuant to O.C.G.A. § 33-4-6, or once Kinsale responds to East Point's bad faith demand if Kinsale continues to refuse to defend East Point.

25.

East Point is entitled to the statutory penalty and attorney's fees.

WHEREFORE, Plaintiff respectfully requests that this Court:

(a) Enter judgment in its favor and against Defendant on all claims asserted herein;
(b) Award Plaintiff all damages incurred as a result of Defendant's actions, including the bad faith penalty;
(c) Award Plaintiff costs and attorneys' fees for prosecuting this action;
(d) Award Plaintiff pre-judgment interest on all damages incurred;
(e) Panel a jury to try all the issues in this case; and

(f) Grant Plaintiff such other and further relief as is necessary.

Respectfully submitted this 19th day of July, 2019.

              LINDSEY & LACY, PC

              */s/  W. Thomas Lacy, Jr.*
              W. Thomas Lacy, Jr.
              Georgia Bar No. 431032

2002 Commerce Drive N, Suite 300
Peachtree City, Georgia 30269
Phone: (770) 486-8445
Fax: (770) 486-8889
tlacy@llptc.com
Attorney for Plaintiff



# LINDSEY & LACY, PC

July 16, 2019

**VIA EMAIL & U.S. CERTIFIED U.S. MAIL** (Return Receipt Requested)
Article No. 7005 2570 0001 4626 9776

Ashley O'Brien, RPLU
Kinsale Insurance Company
Claims Department
2221 Edward Holland Drive, Suite 600
Richmond, VA 23230
Email: ashley.obrien@kinsaleins.com

RE:  Claimant:       Mileena Fish/Jane Doe
     Insured:        East Point Police Department
     Carrier:        Kinsale Insurance Company
     Policy No:      0100043206-1
     Policy Period:  10/01/2017 – 10/01/2018
     Claim No:       00010177

Dear Ms. O'Brien:

This law firm has been retained by the City of East Point ("East Point") to represent it regarding the above referenced claim. Please direct all future correspondence to the undersigned. For various reasons discussed more fully below, East Point disagrees with Kinsale Insurance Company's ("Kinsale") coverage position and requests that it reconsider that position. If it does not, then my client has no choice but to use all legal means to protect its interests. Therefore, East Point makes this bad faith demand in conjunction with its request that Kinsale reverses its denial.

## I. Kinsale's Duty to Defend.

Kinsale should be providing a defense to this case. Officer Richard Goodine was merely conducting normal law enforcement activities when he performed a search of Ms. Fish. Even Ms. Fish's attorneys have reduced the severity of the accusations of sexual assault and rape made in their August 28, 2018 Ante Litem letter. Now, they allege that the search and pat down by Officer Goodine was unwelcome by Ms. Fish in the November 6, 2018 demand letter and characterize that search as sexual assault. Obviously, no one wants to be patted down and searched but this procedure in no way triggers the exclusions Kinsale relies upon in its September 19, 2018 denial



PLAINTIFF'S EXHIBIT "A"

2002 Commerce Drive, N. • Suite 300 • Peachtree City, GA 30269 • 770.486.8445 • Fax 770.486.8889 •

letter[1]. Kinsale's duty to defend East Point is triggered if any of the asserted claims could be covered. A plain reading of the Policy shows that none of the cited exclusions apply.

I. **None of the Exclusions Apply.**

None of the cited exclusions apply because the nature of the allegations has changed dramatically in favor of coverage. Exclusion (h): Criminal Acts Exclusion requires an adjudication of guilt before it is triggered or these professional liability policies would never cover anything because almost every allegation of police misconduct alleges some type of criminal activity. Exclusion (i) Dishonest, Fraudulent, Or Malicious Acts Exclusion is geared more towards employee theft or financial fraud type of behavior rather than the type of behavior currently alleged by the potential Plaintiff.

Exclusion (y) Sexual Abuse or Molestation Exclusion, states as follows:
**Exclusions**

[...]

y. **Sexual Abuse Or Molestation**

"Damages" arising out of:

(1) Any harmful, unwanted, or offensive contact or spoken or written word, whether provoked or unprovoked, and including any sexually or physically violent gesture, contact molestation, abuse, harassment or exploitation;

(2) The "insured's" actual or alleged negligent employment, investigation, supervision, hiring, training or retention of any "employee", "insured" or person for whom the "insured" is legally responsible and whose conduct falls within paragraph (1) above; or

(3) The failure to provide an environment safe from or warn of the dangers of or prevent or fail to report to the proper authorities, any conduct described in paragraph (1) or (2) above.

Kinsale mistakenly relied upon the exclusion because if the Plaintiff merely took offense at an aggressive search of her person, this routine police work falls within the Policy's definition of "Law Enforcement Activities".

"Law Enforcement activities" means any of the official activities or operations of the "name insured's" police department, sheriff agency or other public safety organization, other than a fire district or department, that enforced the law and protects persons or property and includes the official

---

[1] Although East Point has forwarded the additional revised ante litem notices to Kinsale, Kinsale has apparently refused to consider the new information and how that should render a different coverage position.

activities or operations of the "named insured's" penal institutions or facilities.

While it may be unwanted or offensive from the viewpoint of the suspect, being frisked is not unusual for routine police work. If courts were to interpret Exclusion (y) the way Kinsale wants it to be interpreted then any "stop and frisk" operation by a police officer that resulted in a claim of sexual assault by the suspect would not be covered or defended by Kinsale under the terms of this Policy. If that were the case then this Policy does not cover normal day-to-day law enforcement activities despite claiming to do so.

Furthermore, the Policy specifically covers false arrest, detention or imprisonment and violation of civil rights under the Personal Injury definition which states as follows:

> 13. "Personal Injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:
> a. False arrest, detention or imprisonment;
> b. Malicious prosecution;
> c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lesser;
> d, Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's good, products or services, provided that the claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged;
> e. Oral or written publication of material that"
>    (1) appropriates a persons' name, voice, photograph or likeness:
>    (2) unreasonably places a person in a false light; or
>    (3) discloses information about a person's private life;
> f. False or improper service of process;
> g. Violation of property rights;
> h. Violation of civil rights protected under any federal, state or local law;
> provided that no offense shall be deemed to be or result in "personal injury" unless committed in the regular course of "law enforcement activities" by an "insured".

Thus, the latter allegations fall within the definition of Personal Injury. In a similar case, with similar allegations, a federal district court judge held that a fire department was covered.

*Aspen Specialty Ins. Co. v. Old Forge Borough*, 2015 U.S. Dist. LEXIS 181228 (M.D. Penn. 2015). As the Court in *Aspen* explained, when covered and uncovered claims are included in a complaint, the carrier's duty to defend is triggered and it must defend all of the claims. Georgia law requires the same. *Penn Am Ins. Co. v. Disabled Am. Veterans, Inc.*, 268 Ga 564 (1997).

Courts generally do not adopt contractual interpretations that render insurance coverage illusory, thus a court would be sympathetic to East Point's argument that these exclusions need an adjudication, by either a plea agreement or a jury verdict, before extinguishing Kinsale's duty to indemnify. In the meantime, Kinsale's duty to defend is still triggered and Kinsale has breached its contract by refusing to defend this case.

## II. Bad Faith Demand

As with most jurisdictions, Georgia provides that the breadth of coverage is governed by the terms of the Policy. Any ambiguities in the Policy can be settled by the courts as a matter of law but are interpreted against the carrier as the drafter of the Policy. Kinsale has a duty of good faith and fair dealing towards its insured. Failure to pay a claim when a demand is made pursuant to O.C.G.A. §33-4-6 exposes a carrier to up to a 50% of the claim's value as a penalty as well as attorney's fees incurred by the insured.

O.C.G.A. §33-4-6 is Georgia's insurer bad faith statute. It reads in relevant part:

> In the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 50 percent of the liability of the insurer for the loss or $5,000 whichever is greater, and all responsible attorney's fees for the prosecution of the action against the insurer.

Failure to provide a defense or the funds necessary to resolve the claim within the Policy limits should an opportunity to settle the case present itself will expose Kinsale to the statutory bad faith penalties. This letter constitutes East Point's formal demand to immediately revoke the previous denial of coverage and provide East Point a defense in the above referenced case within the next sixty (60) days, pursuant to O.C.G.A. §33-4-6. Failure to do so will result in Kinsale being liable to East Point for all incurred defense costs, the amount of any settlement or judgment and the statutory penalties.

## III. Spoliation

Kinsale has a duty to preserve all material evidence relating to this Claim. Failure to do so may expose Kinsale to sanctions for spoliation of evidence. O.C.G.A. §24-4-22; *Wal-Mart Stores, Inc. v. Lee*, 290 Ga. App. 541 (2008) and *Baxley v. Hakiel, Inc. et al.*, 282 Ga. 312 (2007). I hereby request that Kinsale preserve all documents related to this Claim.

## IV. Conclusion

5 | P a g e

Please let me know if Kinsale intends to honor its obligations under the Policy. As a final matter, East Point requests a tolling of any and all deadlines and contractual time limitations while the parties continue to investigate this matter. Please let me know if Kinsale is willing to enter into a tolling agreement by the close of business on Thursday, July 18, 2019.

Best personal regards,

W. Thomas Lacy

CC: Brad Bowman *(via email only)*
    Brian Dempsey *(via email only)*

WTL/kbl